Root. All right, next case of the morning is number 16-20270, Kuwait Pearls Catering Company v. Kellogg Brown & Root. And Mr. Klassing. Good morning, it's a pleasure to be here. I represent Kuwait Pearls Catering Company. It's a company, along with its parent company Tamimi Global in Kuwait and Saudi Arabia, that was the largest food services and dining facilities provider of our military, both in the first and second Iraq war. Is it owned by a Kuwaiti entity? Kuwait Pearls is owned by a Kuwaiti entity, that's correct. And then it is partially, it is a, it's wholly owned again by a company out of Saudi Arabia called Tamimi Global. They're the ones who built the embassy or the barracks in the green zone that started sinking, right? Not to my knowledge. If they did, I don't know about that. Irrelevant comment. I hope that it was not them. My knowledge of them spans seven years of cases and matters, and all I know about them is that they provided dining facility services during a lot of that time. Basically, Your Honor, this case, we're at the 12B6 stage, it was dismissed at that point. 12B1 stage. I'm sorry, 12B1, you're right. And we are here to ask you to vacate that ruling, to reverse it and send it back. Basic little timeline of this case, just for your information. The government of Iraq and the United States signed a security agreement in November of 2008. And that security agreement, along with other things, had a very simple little phrase in it that said that all buildings connected to the ground, to the soil that exists on agreed facilities and areas, according to two lists that I've never seen, but allegedly were part of this agreement, will be handed over to the government of Iraq in two stages. One was immediately, at the time it was signed, one was in June of 2009. In fact, it said no later than June 30th, 2009, these structures will be handed over to the Iraq government free of charge. In 2010, Kellogg Brown and Kuwait Pearls for this facility, this portable dining facility that existed in Kirkuk. And that agreement was to provide dining facility services, generators, refrigeration units, and a lease of the building. And in fact, KBR paid a monthly amount of lease to Kuwait Pearls for using that building during that entire time. In fact, the record at 369 indicates that the title only passes from KPCC, our company, to KBR if the option to purchase in the contract is exercised. How much money is involved in this dispute? Approximately six and a half million dollars, if you look at it from a standpoint of what's left on the contract. And by that, I mean the lease, right. Or if you look at it from the standpoint of what the building cost to build, it was $11 million. But the way the they got credit for every lease they made, every lease payment. And in fact, I'm sorry. And in fact, the contract said that if they lease it long enough, they own it. So that's the way that worked. Explain how your claims don't depend on a judicial determination that your client still owns this facility, which would be at odds with what the U.S. government is saying. Because take your promissory estoppel, for example. And that's premised on the idea that KBR was obtaining a benefit and not paying your client, right. That's basic promissory estoppel. But as I understand it, according to the U.S. government at least, IRAC owned the facility after 2011 when they were supposedly still using it. So if they owe anyone money, it's IRAC. Well, let me address that two different ways. The agreement actually allows a provision for the U.S. government to continue to use facilities and not have to pay IRAC. So that is not part of our record, but it's in the agreement. But to answer your other question, we have a... If IRAC owns it, they certainly don't have to pay you under a promissory estoppel theory, if that premise is correct. Correct, if it's given to them now. Right. But the reason that this doesn't get into discussions about whether or not it's owned by the IRAC government or not is because we have an independent contract between ourselves and KBR. KBR wrote the contract, they put provisions in it, various types of provisions that cover various different things, and one of the things they included in that contract was a provision that says you can do one of two things. You can demobilize at the end, which take your building, your structure, take it back, or we have at our sole discretion the option to purchase it. Now, the intervening cause, and I'm using that word in a loose way because this is a contract case, but the quote intervening cause that KBR would like to point to is, well, the government told us after we leased it for a year that in fact it belongs to IRAC and we have to give it to them, sorry. And so we can't give it to you, and then we're not going to pay for it. That's KBR's position. And they want to point to this security agreement and the fact that we're interfering with it or that we are asking a court to determine whether it's proper or to determine whether or not IRAC should give it back or should have it, and all we're asking the court to do is say, look, we have a contract action. Simple. We have a bargain for exchange, and that exchange says that if you, KBR, at the end of this contract don't give us the building back, then you have to buy it. There is no other option. And the government is not preventing KBR from paying for it. In fact, I'm just saying the contract doesn't even reference the possibility of IRAC owning the building. Not even in a slight way. All right. I want to ask you two questions in conjunction with that. Sure. Now, I understand this was the second contract between KPCC and KBR. The first was in, to build a, to build a removable dining facility in 06-07. I believe that's correct. And this is, you believe it's correct? The date. I mean, yes, it is correct. I'm saying they built, in KPCC, we'll see in the record, built this, quote, removable dining facility, close quote. Absolutely. When you say removable to me, that indicates like a tent that you just can remove. And you are saying in this action, you either, either pay us for the lease or let us pick our building up and take it home. Correct. But the building cost $11 million to build. So it must be a massive structure. It is a massive structure. So what, does the record say they just want to disassemble it and take it out piece by piece? Well, the record doesn't say that specifically because we don't have a record built up yet. All right. Second question. The district court, in its opinion at page 37 and at 37, 38, note 18, seems to say that this building was specifically designated in the security agreement to belong to Iraq. But everyone else seems to say that's not correct. Yeah, I'm not really sure. What's the answer to that? I'm not sure why the court said that, Your Honor, because there, what the court is inferring is that that phrase I mentioned a while ago, that the paragraph that says structured buildings that are on the soil will be handed over, I believe the judge is inferring that that means this must be one of them. But if you look at that agreement, which is in the record, it's at 437 and a couple of places, it says these buildings will be handed over according to two lists. Don't you think, though, that you just change in to pursuant to, and that makes it consistent with the fact? Say that again, Your Honor. I'm sorry. I didn't follow you. Well, it just could be a slight misuse of terms in saying that it was in the agreement. It could have been the government's position would be that it was pursuant to the agreement. Oh, I see what you're saying. Yes. I mean, pursuant to would be a little bit more accurate. It's certainly not listed in the agreement. And you say you've never seen the supposed list that were confected under the security agreement to what, who owned what and when and where? Despite Freedom of Information Act requests to every possible agency in the government, I have received no list ever, or from KBR. Is there any evidence that when these lists were put together? Not that I've had my eyes on anywhere, including this one, which is befuddling, to say the least. But because it definitely says in the agreement there are two specific lists of buildings that will be transferred on specific days. But now you're getting in to construction of the agreement. Good segue. Because you're right, but we are not needing the court to do that. We don't need the court to decide whether it should or shouldn't be in that KBR. We have a contract with them. That contract is a contract we're seeking to enforce. It's the payment for the building that they didn't give back to us and won't let us take. And certainly now... But that's the whole point. It's the government, the U.S. government saying we're going to give this to Iraq. It's not anything KBR did to keep you from disassembling that structure and taking it with you. Well, that's not actually, that's partially true. KBR would not allow us to take the building. In fact, the record shows that we were kicked out of the site. I thought because the U.S. government said we're giving that to Iraq during the transition. Right. And so they would not, so KBR then... So how is that KBR's fault? That isn't KBR's fault that the government did that. It isn't. But KBR has an agreement with us that says if we don't, if you don't demobilize, we'll pay for it. And then maybe KBR... I don't see that. Where in the agreement do you see that? Well, it's not in that exact words. You have two different phrases. You have a demobilization of the building paragraph Is there a force majeure clause? Not that I recall. I don't believe there is one. And there is, and then there's the sole discretion argument clause that says that they will pay for it at their sole discretion at the end of the lease if they want to keep it. And our position is, well, you kept it. You may have an excuse as to why, and you may have a claim against the government for that. Has there been any claim made in this litigation that these two lists that were supposedly drawn up of the buildings that had to be turned over to Iraq, that that's some sort of state secret or something that no one can see outside of the government? Not that anyone's ever said to me, no. Did you make demand for those lists? I know you haven't had much discovery because this is 12b1, so we're not even to that stage yet, are we? No, but we had a pre-suit discovery case in the Harris County Courts before we ever filed this litigation. And we did exchange discovery in that, and we did ask for that list. And we received copies of that agreement, which is why you have it on the record, no list. Was any reason given why you were not given the list, the two lists? They don't have them. It's possible. They being KBR. I mean, isn't it possible that the government doesn't even have a list, that it just turned over things and, you know, there might be lists everywhere, but. That's my guess. I don't see why, well, I get, there is a, the party's far over the fact that at least one of KBR's arguments is that it wouldn't get paid unless the government paid it first, or the U wouldn't get paid unless the government paid KBR. Right, so they point to a provision that says, I think it's paragraph three of record 365 that says, the U.S. government may choose to provide funding for the services contemplated by this subcontract. KBR's obligation under the subcontract is contingent on the availability of appropriated funds. Our argument to that paragraph is that this is, that's about the services provided under the contract. In other words, at any given time, the government may decide not to use those services or may cut off the services, but that has nothing to do with the purchase of a building. It says performance under the subcontract. I'm trying to, all right, well, I'll look at it while you're talking. I don't. Yeah, the paragraph that I'm talking about that's actually quoted from the contract that they refer to. Paragraph three. Right. Funding and availability of funds. Right. Okay. Yeah, that, that deals with, in the very first sentence it tells you it's to providing funding for the services contemplated by the contract. All right, tell us your position, of course, the position being urged on the political question doctrine is, oh, to determine all of this ownership questions, et cetera, et cetera, we're going to have to get into high level negotiations between the United States and Iraq and this, that, and the other, and give us your best position on why we don't have to get into that thicket. My best position on that, Your Honor, is that the, the political question issue surrounding this is something we don't have to get into because we're not challenging the right of Iraq or U.S. to enter that agreement. We're not challenging the language of the agreement. It's interesting to point out the UKBR breached your contract with us. Period. And the fact that they say, well, we'll have to get into this discussion as to why, that's interesting for tort cases. When you look at political question and even sovereign immunity cases, certainly if someone's saying the government's contributory negligent or if the government has some act that caused your damages, then therefore under those cases we have to get involved in those questions. But that doesn't apply to contract cases. And for a good reason. Because imagine a scenario where the government in this contract says, all right, you've got generators. And, hey, KBR, here's what I want you to do. I want you to use those electric generators that they're providing under the contract. But at the end of the month, don't pay them. Just don't ever pay them. And then KBR says, can't pay you. Government won't let me. We sue and they go, sorry, political question. Military made a decision. That's why contract cases don't fit into these little pegs at all. In fact, almost every case that KBR has cited in their brief is a tort case or is some sort of tort or negligence or that type of case. But not contract cases. Sovereign immunity, our argument is, doesn't even apply in this case under Franconia and other cases because the government's free to contract with third parties and we have an independent contract with KBR. You know, I'm sympathetic to this in theory, but I am wondering, why didn't you just file something in the Court of Claims? Well, that's the. Because political question wouldn't be applicable there, would it? No. Under the Tucker Act, we could file that. We still have time to do that. And I'm not suggesting that we won't do that. But my fear at this point, since we have a contract with KBR is, is we go to the Court of Claims and the government says, wait a minute, wait a minute, you have a contract with KBR. If you have damages, that's who your party is. Go sue them. From our standpoint, that was who the agreement was with. That's who we thought we should go after initially because they're the ones that breached it. We didn't have a deal with the U.S. government. We didn't have a contract with them. We didn't have privity with them. And from our standpoint, when they took the building from KBR, that's who they took it from. Because KBR had possession of it. They had possessory right to it. And instead of giving it back, they allowed it to go somewhere else. So we feel like that's the chain of command, of damage. Okay. You have a chance for rebuttal. Thank you, Your Honors. I appreciate it. Mr. Harris. May it please the Court. This suit arises from the U.S. military's decision to designate plaintiff's dining facility as the property of Iraq pursuant to the U.S.'s obligations under a security agreement. But why do we have to get into all of those obligations? Why do we have to get into trying to decipher what, when, or why, or how all of these provisions of the security agreement were agreed upon? Why can't we just look at a breach of contract claim on the merits? Your Honor, because under the security agreement, the title and the ownership of the dining facility was transferred to Iraq, and that is key to the contract claim. Whenever you look at the breach of contract claim, you have to look at how the case will be tried and the issues that will arise. This Court has made that clear in Lane. In determining a political question and whether a case is judiciable, you have to look at the plaintiff's claims and how the defendant will defend the case. And here, all— The claim is you breached your contract. You kicked us out of this building instead of me. Well, this is a government decision. Well, I know it is, but it's a government decision. So argue it on the merits. Your Honor, let me back up and try to answer your question on the political question doctrine. It is a governmental decision. It's a military decision. And it invokes the political question doctrine because the whole security agreement deals with the sovereignty of the United States and Iraq. It deals with property ownership. It deals with troops. It deals with occupation. It deals with property. It deals with jurisdiction over soldiers and civilians and contractors that are there. So that means they can just have their cake—the government can have its cake and eat it? In other words, they got the dining facility built, $11 million facility, and get to cancel the lease for services and then take the—I mean, where's the remedy for a subcontractor here? And why would anyone contract with the government on foreign fields if this is what can happen? Your Honor, there are remedies against the government. As you asked earlier, they could go to the court of claims, as they have indicated they can. Government contracts have dispute provisions in them so that claims can be made against the government. But they don't have a government contract. They have a KBR subcontract. And it doesn't say that it is subject to whatever terms the U.S. government decides to impose, does it? Your Honor, I was about to say you had asked earlier about a force majeure question. The subcontract, there are only portions of that in the record. There are other relevant provisions as to the remedy. Give me one or two. The conflicts provision, for example. There is a conflicts provision in the subcontract dealing with disputes. And it's paragraph 10.0 of the Purchase Order Subcontract Special Conditions. Again, this is not in the record that they filed with this court. But there are relevant provisions that show, for example, that they do have remedies. And that provision, for example, makes the government decision binding on Kuwait Pearls. It would be binding on them. In the government contracts arena, as you point out, Kuwait Pearls doesn't have a contract with the government. KBR does. But the way the disputes clauses work, that if a subcontractor has a complaint about a government decision, the subcontractor goes to the contractor with that, and then the contractor makes the claim with the government. That's the way the dispute clause works. But we don't have that in the record, those provisions. And Judge Barksdale, going back to your question about why this is a political question. Again, it goes to sovereignty. It deals with property disputes. The military and the U.S. But I don't understand why you couldn't have just filed an answer followed by an immediate summary judgment motion saying, look at the disputes clause. This can all be solved under the contract. Your Honor, because of — Did the government tell you to do political questions? No, Your Honor. But because that's jurisdictional, we needed to file a 12B1 motion first, and the decision was made to file the 12B1 and 12B6 motion as opposed to going to the merits of the case. Because this case does invoke the political question doctrine, and it's not justiciable, and therefore the district court — Let me ask about that, Mr. Harris. One of the questions is whether there's judicially manageable standards. And this comes down largely to interpreting contractual language in the security agreement. Why doesn't the Japan whaling case, which says, look, courts can interpret treaties, why doesn't that preclude the district court's finding that this was not something courts could handle? Your Honor, under Baker v. Carr, I think the more relevant standard is probably the first factor. The court relied on factors 1, 2, 4, and 6, and I believe the first factor is probably more applicable here because this does involve a constitutional commitment to a coordinate political department. This is a foreign relations issue. It's a military issue. Why is it a foreign relations issue to decide proper ownership of a dining facility as far as who breached what contract? For two reasons. Again, it deals with sovereignty and ownership of land and occupation of land, and the government and the military may produce those two lists as to when this decision was made it belonged to Iraq. They're not challenging whether it belonged to Iraq. They're just saying you breached your contract with them. They're saying you knew when you signed this contract, perhaps you knew when you signed this contract in 2010, that it had already been decided under this security agreement in 2008 that this facility was going to belong to Iraq. Your Honor, to be clear, KBR doesn't have those lists. Those lists are with the government if they exist. KBR does not have those lists. But every claim under their contract deals with ownership of the property. They don't have a contract claim if they can't say that they own this property. They want to show when you knew you owned the property, when KBR knew that actually the decision had been made that Iraq owned this property. That's the point. And if they can show that, and if they can show KBR knew or should have known when it entered this contract in 2010 that it had already been decided this was going to be given to Iraq, then that's their fraud and breach of promise and promissory estoppel arguments. But, again, looking at how the case would be tried, that decision wasn't made by the military until 2011. Well, that's what you say. Well, the military came to KBR in 2011, and this is in the record, the e-mail is in the record, and they contact Kuwait Pearls to see if they would sell the dining facility. In November of 2011, the government comes back and says actually that dining facility is the property of Iraq under the security agreement. When was that decision made? When was that decision actually made? We don't know. Well, apparently And if we just knew that, then this case becomes very simple. Apparently it was made between the time the government asked us and the time the government made the decision in November when it was transmitted. But apparently doesn't get it as far as kicking them out of court on a political question theory. And also remembering that the government approved the subcontract in 2010. That was a government-approved contract. Let me ask you, related to this timing question, they submit an e-mail from KBR, so there's some kind of discovery that's occurred for jurisdictional. KBR writes the government and questions whether someone will be liable if the title has simply been transferred. Now, can we tell from the contracts context whether KBR is concerned about its liability or the government's liability? I don't think you could really tell. And those were exchanges going on about the contract. But the point was that if the government comes in and makes this decision, there may ultimately be liability. Certainly KBR believes that's the government's liability because it's the government that made the decision that the property belongs to Iraq. And under the contract, going back to the language of the contract and how the case would be tried. Well, let's think about this Tucker Act claim because they're not the party to the contract. And, you know, we don't know about, I hate to decide things on a blank slate. If there is a contractual dispute resolution problem that we're not aware of, that's a real problem in my mind. But, you know, can they go to the court of claims without having first gotten booted out of here on the political question doctrine? I believe they can, Your Honor, but I can't say that I've done independent research to look at that. But as far as I know, I don't know of any impediment that there would be for them going directly to the court of claims. But on the other hand, they could get a judgment against KBR and then also go to the court of claims and then bring you in as a party. If they had a judgment against KBR, they could enforce the judgment against KBR. Well, I'm sure KBR would be going on an appeal and then the government would be saying, you know, KBR would have a claim against the government and so on. So it would get complicated. Yes, Your Honor, it would. Going back to... With the breach of contract, if you had exercised your option, forget the security agreement, in the normal scheme of things, without the security agreement, you could have exercised your option and paid $14 million, whatever it is, to become the owner of this facility. But to find in your favor now in a breach of contract claim, you'd basically be paying millions of dollars for something you don't own, but that Iraq owns. That's right. Isn't that why it depends on the security agreement basically prevented the contract from being effectuated? Absolutely. And that's also consistent with the language of the security agreement. Well, I don't see it that way at all. Well, at least for arguendo, I don't see it that way, because if you end up paying under a breach of contract theory, then you go to the Court of Claims. And Judge Costa, I said the security agreement, I meant under the contract, because if you look at the contract under 4.5.2, they've alleged breach of contract in two theories. The first theory is that KBR failed to purchase the dining facility. Under Section 4.5.2 of the subcontract, they have to pass title whenever KBR pays them. They can't do that. So there is no breach of contract because it's a purchase. They have nothing to sell, and that's not KBR's fault. KBR didn't breach the contract in determining they have nothing to sell. The government, under the security agreement, made the decision that this facility is real property that belongs to the country of Iraq. And so there is no breach of contract under 4.5.2. The other breach of contract theory they have is... A breach of contract, if you knew or should have known that when you entered into this contract in 2010. Well, Your Honor, there's no evidence in the record that we knew it, but again, the breach of contract comes back to the... That's because nobody's produced these mysterious lists if they even exist. I mean, that's why I'm having a difficult time seeing political question. Either Iraq owned the building or it didn't. So why is that such a big political question? If we could just get a date. It's because of why the government made this determination that's a political question. One of the issues as to why the government did this under the policy, there's a 2009 policy memo on this, and the government says that the bases needed to be transferred in full operating condition during this process of withdrawal so that the Iraqi forces can come in and immediately engage in force protection and security. They had to be able to transfer these facilities intact. That's another reason that it's a political question. That's a military and a political strategic decision and a foreign policy relations decision as to whether you're going to pull these buildings out and let the Iraqi forces come in and build new dining halls and new dining facilities, or whether you're going to give it to them in a turnkey method so whenever the U.S. forces withdraw, and that was going on through 2011, so that when the U.S. forces withdraw, the Iraqi forces can step in and immediately take over force protection duties. That is a political and a foreign relations decision. I surely don't recall that in the brief. We have a lot of briefs and a lot of words written, but this sounds new to me. And it's a record... I thought it wasn't on the list. The lists were created before this ever happened, right, in 2011? And then it's just an interpretation of this building and structure language that some military or State Department official makes? The lists were created back at the time the security agreement was created in 2008, which was effective in 2009, and it's not even clear from the security agreement that all of the properties to be transferred are on those lists or whether these are the properties to be transferred on January 2009 and June 2009 because, again, in looking at the security agreement, if you go back to page 24, which is record 228, it says that forces... That's the wrong page. It's on page 20, which is page 224 in the record. It says the U.S. forces shall withdraw from Iraqi territory no later than December 31, 2011. So you have this happening in phases. You have one list which says these transfers will happen immediately. You have another list that says they'll happen in 2009. You have U.S. forces pulling out of villages and towns in 2009. Then you have all U.S. forces withdrawing from 2011. And so it's not clear that those two lists encompass all of the properties to be transferred or simply the first two tranches of properties to be transferred. It just isn't clear. I've read this agreement many, many times and can't determine that, in fact, those lists are to be all the properties or just the properties transferred at that time. I just don't understand why this can't go through discovery and summary judgment or then a trial on the merits or whatever. I just don't see how this is getting into any big sovereign dispute between Iraq and the United States, et cetera, et cetera, as far as just breach of contract and what happened when and where. And, Your Honor, it's because the government's decision about ownership invokes a political question because it's foreign relations. Any government decision about ownership involves a political question. No, Your Honor, but in this case, in this context, when it deals with transfer of facilities for the military, whenever the U.S. is going to- Let me give you another example because suppose that a subcontractor had been hired to do maintenance on equipment because of deterioration due to the desert sands and the maintenance agreement is five years, flat five years, and the troops are withdrawn and the government tells KBR, Troops are going out. You don't need to pay for maintenance because we're giving all these vehicles to Iraq, which we did, in fact. So KBR, under your theory, would be entitled to breach the lease, a fixed-term lease, on the same grounds, which is a political question. I think largely it would depend on the terms of the contract, but it may well be- But there's nothing in the terms of this contract that is dependent on what the government does. This is a plain and simple subcontract. And that's why I say this, I don't see the- I have a great difficulty applying political question to a contract dispute. Your Honor, under this contract, it is implicit that the government's actions are relevant to it because the government is the client under the subcontract. The government's the client in any subcontract anywhere, but especially overseas in a war theater. And there are funding provisions in here, and again, there are portions of the subcontract we don't have. So that's one of the things hampering the decision, is that there are other provisions. So if you had offered those portions of the subcontract, you might have won on 12b-1 but lost on political question. No, Your Honor, I believe under political question, it is the same- Well, the 12b-1 would be the political question doctrine, but under the political question doctrine, it goes back to the military's decision and whether that invokes the factors under Baker v. Carr. And it invokes the first factor as well as several others. Well, what I'm saying is under 12b-1, wouldn't you have had a good argument that there's some kind of dispute resolution provision in the subcontract? They didn't exhaust their remedy, and therefore, you know, it's not a right. The dispute's not right. There would be other arguments as well as merits arguments if the case ever got to that stage, but under the political question doctrine, for jurisdictional purposes. Will you cite one contract case that's been held non-justiciable under political question? I don't know of any contract cases under the political question doctrine, but if you look at Baker v. Carr and the factors and the reasoning that's set out, there is no reason that the political question doctrine shouldn't apply as it does in a tort case to a breach of contract case. But because, again, you're simply looking at whether the Baker v. Carr factors are implicated, and here, the decision by the military that the property belongs to Iraq invokes the first Baker v. Carr factor, and under these facts, under this contract, the ownership of the property is essential to determining how the case would be tried, because under 4.5.2, there's no breach because they have to transfer title before there's any obligation to pay, and under their second breach of contract theory, and that is that KBR didn't allow the plaintiff to come in and remove the dining facility, that's under a separate provision of the subcontract. It's 8.8.1, and under that provision, they are only allowed to move what's termed subcontractor-owned assets, and the military has determined that Quake Pearls does not own that asset. So that's how this case would be tried. You look at their claims, the way it would be defended. Under both of their breach theories, they have to own the property before there can be any proof of their claim, and that's essential, and it goes to the heart of the case, and that's why the political question doctrine would apply in this case on a breach of contract. If the Court has no further questions, we'll submit the remaining issues on the breach. Thank you. All right. Mr. Klassing? Why don't you respond to his last argument there, premised on the fact that you cannot enforce this contract? Well, first of all, the contract, and this is at the record at 369, it states that the title passes from Quake Pearls, meaning we have it first, only if the option to purchase is exercised with our contract with KBR. So what happened, obviously, the U.S. government gave KBR direction about what to do with the property, and KBR did that, and they kept it, but they kept using it and didn't pay for it and wouldn't allow us to take it and didn't pay for it. Well, it's just a theory that they kept using it. I mean, you might have two or three months' worth of rent, right, on that? No, I think actually, Your Honor, it may be, if it's in the record, I can't tell you the site, but I'm pretty sure that it's in the record that they had it for a whole other year at least, and then another subcontractor may have come in after that. But I'm pretty sure that that's in the record. I just unfortunately don't have that site in front of me. I don't think that's in dispute. But even so, the point being is that we don't have to get into a discussion about whether Iraq owns it now. We owned it. KBR wouldn't let us have it back, and they didn't pay for it. So there's two clauses you're invoking. One is a pure option they have, which is purely discretionary to buy it. So I don't see how that can serve as a breach of contract because it's purely discretionary. The second clause says you get to take it with you if they don't buy it. What did they do to prevent you from taking it? What they did is they wouldn't allow us to come on and take it. KBR or the United States military? I guess it depends on your perspective. KBR was our boss, right? So KBR told us we had to leave, and so we did. Now, they say we told you that because the government told us that, and I understand that's their position, and that's fine. But the way these things work is Kuwait Pearls didn't have contact with the client, which is the U.S. government. They didn't go and meet with the military and have discussions about any of this stuff. KBR was our boss. In fact, our agreement makes that very clear. One of the things that I pointed out earlier but didn't say very clearly, I don't think, is all of these defenses deal with either direction or discretion of KBR. You look at was the military exercising full direction and full discretion, or was KBR exercising some? You know, I have a real problem about contract actions where we don't have the whole contract in front of us, and I realize that many of these military subcontracts have many, many addenda and provisions and so on, but still, don't we need to see the whole contract, which may include some kind of dispute resolution provision before we can really decide whether it's a political question? Well, if the other parts of the contract are relevant to the discussion, then I would agree. I don't have that particular provision in front of me right now, but I've read these contracts a million times over the last seven years, and so I don't want to speak out of turn about what they say. Well, sometimes courts have a little different view of what's relevant in contracts. Absolutely. But apparently both of these parties decided that that part of the contract wasn't something you needed to see to resolve this issue. And certainly from our standpoint, we were just focusing on what they did or didn't do with regard to it. Is there or is there not a dispute resolution provision? Well, there are a couple. There's one that deals with whether you go to arbitration or not and that kind of an issue. There's some of these contracts, and I don't remember if this one has it, but I assume it does, have a pay when paid clause. I don't want to focus on the word when, but they're not arguing that in this case, and we've actually, that's my view, the pay when paid clause is a timing issue. It's been decided by a Gulf Coast case in Texas. And then there's another disputes clause that deals with government direction, but I don't believe, and I just apologize, I don't have the language in my head to tell you, but I don't believe it's something that's prohibitive in this contract or we would have been concerned about it, and we certainly aren't. So, yes, there's some other provisions in there, but I don't think they deal with this particular issue. But what I was going to say about that direction and discretion thing is that KBR's discretion and direction began when they took this or whatever the device they used in sort of writing out the contract, because this is not a situation where you have in lots of these cases, the dam cases and the military product cases, and even the case they cited to you a couple of weeks ago, this Al-Shamari case, where you have the government saying, hey, subcontractor from the government, you tell your subs and you, I want exactly this procedure to be followed and exactly this design to be followed and exactly this direction. We don't have that at all. KBR independently wrote this contract. We signed it. Well, I bet you it's a government form. Well, I can only tell you, Your Honor, from personal experience in these cases that this is a contract that KBR drafted, and I even know the lawyers that did it. So I just know that personally. But, no, it's, you know, that's where it comes from. And so that to me is where the discretion and direction began, not with the U.S. government. And my time is completely up. Do you have any other questions? No. We'll struggle with it. I know. It's not an easy one. And I appreciate all three of you, Your Honor. This has been a pleasure to be here. Thank you. Okay. Thank you. Do you want to take a break after this now or now? Okay.